**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

RODERICK L. SINCLAIR,

    Plaintiff,

v.

WARDEN STANLEY WILLIAMS; SGT. ROGER PAULEY; CO II JUSTIN HALL; CO KATHY MARTIN; DEPUTY WARDEN ERIC SMOKES; and DEWAYNE JOHNSON,

    Defendants.

CIVIL ACTION NO.: 6:14-cv-72

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Hancock State Prison in Sparta, Georgia, filed a cause of action, as amended, pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at Smith State Prison in Glennville, Georgia. (Docs. 1, 8, 9, 14.) Defendants Kathy Martin, Roger Pauley, Eric Smokes, and Wayne Johnson ("Defendants")[1] filed a Motion to Dismiss. (Doc. 26.) In their Motion, Defendants contend that Plaintiff failed to exhaust his administrative remedies before filing this action. Plaintiff responded to this Motion,[2] and Defendants filed a Reply. (Doc. 40.) For the reasons which

---

[1] Warden Stanley Williams and the Deputy Warden of Security were dismissed as named Defendants by Order dated May 29, 2015. (Doc. 51.) That Order adopted the Magistrate Judge's Report dated January 26, 2015, which recommended the dismissal of these two Defendants, as well as the dismissal of Defendant Celia Zammy. (Doc. 17.) Though the Clerk's Office was not specifically directed to add "Deputy Warden of Security" upon the docket of this case on a previous occasion, the Clerk of Court is now so **directed** for record-keeping purposes.

[2] Plaintiff filed a pleading entitled "Plaintiffs [sic] Response to Defendants [sic] Motion to Dismiss". (Doc. 36.) As a review bears out, this pleading can hardly be considered a Response to Defendants' Motion. Plaintiff also filed several other documents in response to Defendants' Motion. (Docs. 42–46, 48, 52, 53, & 56.) While many of these pleadings were outside the already-extended period for Plaintiff's response, in an abundance of caution, the Court has considered them when making the instant Report and Recommendation.

follow, I **RECOMMEND** that Defendants' Motion be **GRANTED**, and Plaintiff's Complaint be **DISMISSED**, without prejudice. Plaintiff's Motions to Amend/Correct, (docs. 62, 70), are **DENIED**, and the Court should **DENY** Plaintiff's Motions to Reinstate/Add, (docs. 75, 76). Defendants' Motion for Protective Order, (doc. 77), is **GRANTED** for the reasons set forth in that Motion. Finally, the Court should **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND[4]

Plaintiff filed a cause of action pursuant to 42 U.S.C. § 1983 on July 7, 2014, to contest certain conditions of his confinement while he was housed at Smith State Prison in Glennville, Georgia. (Doc. 1.) In his original Complaint and amendments thereto, Plaintiff alleged another inmate, Cordarell Cole, assaulted him and stabbed him with a sharpened piece of metal on September 1, 2012. Plaintiff asserted other inmates encouraged Cole to continue assaulting Plaintiff. Plaintiff also asserted Defendants Pauley and Hall then entered "the yard", and Defendant Pauley instructed Plaintiff and Cole to stop their actions and to put down the knife, or he was going to spray them both. (Doc. 1, p. 5.) Plaintiff averred that this assault lasted several minutes until he was able to gain control of the knife, and he received several injuries as a result. Plaintiff also asserts that he received medical attention from two (2) outside hospitals. Plaintiff amended his Complaint on August 22, 2014, and on September 19, 2014. (Docs. 8, 9.) In addition to Defendants Pauley and Hall, Plaintiff named Stanley Williams, Celia Zammy, Kathy Martin, Eric Smokes, and the Deputy Warden of Security as Defendants in this case.

On September 23, 2014, after conducting the requisite frivolity review of Plaintiff's Complaint, United States Magistrate Judge James E. Graham recommended that Plaintiff's Amended Complaint be dismissed in its entirety due to Plaintiff's failure to state a claim upon

---

[4] The recited allegations are taken from Plaintiff's Complaint, as amended, and are viewed, as they must be at this stage, in the light most favorable to Plaintiff.

which relief can be granted. (Doc. 11.) In response to this recommendation, Plaintiff filed his Third Amended Complaint on October 6, 2014. (Doc. 14.)[5] Following this amendment, on January 26, 2015, Magistrate Judge Graham issued another Report and Recommendation after conducting a frivolity review. (Doc. 17.) Judge Graham determined that Plaintiff's claims against Defendants Martin, Smokes, Johnson, Pauley, and Hall should proceed, but Judge Graham recommended that Plaintiff's claims against Defendant Williams, Defendant Zammy, and the Deputy Warden of Security should be dismissed. Id. Accordingly, Defendants Martin, Smokes, Johnson, and Pauley were served with this action.[6] (Docs. 19–22.) United States District Court Judge Randall Hall issued an Order adopting the Report and Recommendation and specifically dismissed Defendant Zammy. (Doc. 51.)[7]

Defendants filed a Motion to Dismiss on March 30, 2015. (Doc. 26.) Due to this Motion to Dismiss, the Court stayed discovery in this case on April 10, 2015. (Doc. 33.) Since that time, Plaintiff has filed numerous pleadings in this action, including several purportedly in response to Defendants' Motion to Dismiss. (Docs. 36, 43–46, 52, 53, 56.) Plaintiff's filings also include, but are by no means limited to: Motions to Amend the Complaint and briefs in

---

[5] This pleading is labeled "Plaintiff's Second Amended Complaint on the Court's docket" but should actually be docketed as "Plaintiff's Third Amended Complaint." The Clerk of the Court is **DIRECTED** to correct this on the docket of this case.

[6] It does not appear Defendant Hall has been served with a copy of Plaintiff's Complaint. (Doc. 28) ("Mr. Hall is no longer employed with Smith State Prison[,] and the Georgia Dept. of Corrections [has] not been able to locate him.") Plaintiff was directed to provide an adequate address for service on Defendant Hall. (Doc. 34.) In response, Plaintiff stated that Defendant Hall's last known address was in Jesup, Georgia, yet he failed to provide the Court with an adequate address. (Doc. 38.) As of the date of this Report, Defendant Hall still has not been served. The arguments raised by Defendants for dismissal of Plaintiff's Complaint apply no less to Hall. Based on the undersigned's recommended disposition of Defendants' Motion, Plaintiff's claims against Defendant Hall should likewise be **DISMISSED**, without prejudice.

[7] As discussed below, though Judge Hall adopted the Report and Recommendation in its entirety, the adoption Order did not specifically discuss claims against Defendants Williams and the Deputy Warden of Security because Plaintiff did not file Objections as to those Defendants.

support thereof, (docs. 42, 43–46, 52, 53, 56, 58, 61, 62, 65, 70, 74); a Motion to Reinstate Defendants Zammy and the Deputy Warden of Security, (doc. 75); and a Motion to Add/Reinstate Defendant Zeal, (doc. 76). Given the barrage of pleadings filed by Plaintiff, Defendants filed a Motion for a Protective Order seeking an order that they be relieved from any further obligation to respond to Plaintiff's pleadings. (Doc. 77.)

DISCUSSION

Defendants raise several grounds for dismissal of Plaintiff's Complaint in their Motion. First, Defendants assert Plaintiff failed to exhaust his administrative remedies prior to filing his Complaint. Defendants also assert Plaintiff cannot pursue monetary damages claims against them in their official capacities. Next, Defendants contend Plaintiff cannot sustain his Eighth Amendment claims for failure to protect and failure to intervene. Defendants allege they cannot be held liable for another's alleged actions under vicarious liability principles. Finally, Defendants maintain they are entitled to qualified immunity.

As set forth below, the undersigned agrees Plaintiff failed to exhaust his administrative remedies prior to the filing of his Complaint, and Defendants' Motion is due to be granted on this basis. Consequently, it is unnecessary to address the remaining grounds for dismissal in Defendants' Motion.

**I.    Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment;

instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

## II. Exhaustion Requirements

### A. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). "However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7,

6

2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### B. The Georgia Department of Corrections' Grievance Procedure

Standard Operating Procedure ("SOP") IIB05-0001 sets forth the three (3) steps an inmate had to complete under the Georgia Department of Corrections' grievance procedure in effect at the time the events giving rise to this cause of action arose.[8] First, an inmate had to file an informal grievance "no later than 10 calendar days from the date" the inmate was aware or should have been aware "of the facts giving rise to the grievance." (Doc. 26-2, p. 6.) An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. (Id. at p. 7.) If the inmate was dissatisfied with the resolution of his informal grievance, he was to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. (Id.) Once an inmate received the Warden's response to his formal grievance and was dissatisfied with that response, he had five (5) business days to file an appeal with the Commissioner. (Id. at p. 9.) The Commissioner's Office had 90 calendar days after receipt of the appeal to respond. (Id. at p. 10.)

---

[8] This SOP was amended with an effective date of December 10, 2012, and no longer requires an inmate to file an informal grievance. (Doc. 26-1, p. 4.) However, because this cause of action arose prior to the amendment, the previous version of this SOP is relevant for this Court's purposes, except as otherwise noted.

An inmate could file a grievance regarding "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections[ ]", other than, for example, housing assignments. (Id. at p. 4.) Grievances were to be "filled out using blue or black ink." (Id. at p. 5.) If an inmate attempted "to grieve an item that is not grievable . . ., is out of time, . . . or otherwise does not comply with the requirements of [SOP IIB05-0001], it will be rejected, noting the specific reason for this action." (Id.) An inmate was limited to having two pending, non-emergency grievances at the institutional level per week. (Id.)

With these standards and procedures in mind, the Court now addresses Defendants' argument that Plaintiff did not exhaust his administrative remedies as to his claims against them.

## III. Assessment of Plaintiff's Exhaustion

Defendants aver Plaintiff filed seventeen grievances while he was housed at Smith State Prison. Of those seventeen grievances, Defendants assert only seven of Plaintiff's grievances pertain to the events giving rise to his Complaint, whether directly or tangentially. (Doc. 26, p. 8; doc. 26-1, p. 8; doc. 26-3.) However, Defendants contend, Plaintiff failed to exhaust his administrative remedies, as set forth in the Georgia Department of Corrections' grievance procedures. (Id.) Defendants offer the Affidavit of Eyvette Cook, the Chief Counselor and Grievance Coordinator at Smith State Prison, in support of their claim that Plaintiff failed to exhaust the grievance procedures. (Doc. 26-1.)

Plaintiff offers nothing indicating he exhausted his administrative remedies prior to the filing of his Complaint.[9] Nevertheless, the Court will assess Plaintiff's exhaustion by utilizing the documents Defendants submitted in support of their position.

---

[9] As noted above, Plaintiff has barraged this Court and Defendants' counsel with motions and other pleadings. However, very little of what Plaintiff has filed with the Court is responsive to Defendants'

8

### A. Informal Grievances Numbered 132551 & 133426

Plaintiff submitted Informal Grievance Number 132551 on September 17, 2012, and asserted his grievance was to inform "whomever this is concerned to that I was attacked by an inmate that wasn't supposed to be let on the Northside big yard on 9-1-2012. As a result I was hospitalized and now I'm being held in the hole. I was in D building and he was in E." (Doc. 26-4, p. 2.) Plaintiff requested to be let out of the hole immediately because he claimed he did nothing wrong. Plaintiff's informal grievance was rejected because Plaintiff had written it in pencil. (Id. at p. 2.)

Plaintiff re-submitted this grievance under Informal Grievance Number 133426 on September 26, 2012, and he set forth essentially the same facts and requested relief as contained in Informal Grievance Number 132551. (Doc. 26-5, p. 2.) On October 4, 2012, this informal grievance was also rejected, but it was because housing assignments are non-grievable under SOP IIB05-0001. (Id.)

Plaintiff responds that, even though the substance of these two informal grievances is the same, they were categorized as "staff negligence" and "assignment/classification", respectively. (Doc. 42-1, p. 1.) According to Plaintiff, these informal grievances should have been categorized in the same manner, and because they were not, the rejection of Informal Grievance Number 133423 on the basis that he presented a non-grievable issue was erroneous. (Id. at p. 2.)

The Court notes these two informal grievances were categorized differently. Yet, the facts before this Court are that these informal grievances were rejected, and Plaintiff did not re-submit these informal grievances properly, nor did he file a formal grievance or an appeal of these rejected informal grievances. Plaintiff does not contend that he filed a formal grievance or

---

contention that he failed to exhaust his administrative remedies prior to the filing of this cause of action. Where appropriate, the Court will make note of Plaintiff's assertions in this regard.

an appeal regarding these rejected informal grievances. Consequently, under the first Turner step, even taking Plaintiff's version of facts as true, the filings of Informal Grievances Numbered 132551 and 133426 do not satisfy the requirements of SOP IIB05-0001 and cannot constitute exhaustion.[10]

### B. Informal Grievances Numbered 136404 & 136572

Plaintiff filed Informal Grievance Number 136404 on October 26, 2012, and asserted that the E-Building officers allowed Cordarell Cole onto the Northside big yard on September 1, 2012. Plaintiff also asserted Cordarell Cole assaulted him and stabbed him several times, leading to Plaintiff's hospitalization. (Doc. 26-6, p. 3.) This informal grievance was rejected because the issues presented had been addressed and because the informal grievance was untimely. (Id.)

Plaintiff filed Informal Grievance Number 136572 on October 27, 2012. Plaintiff had already been transferred from Smith State Prison on this date and asserted: "This informal grievance is on Smith State Prison for not having adequate classification and supervision of inmates including myself on the Northside big yard. As a result I was stabbed by another inmate several times. I was hospitalized and suffered a left collapsed lung. I still suffer now." (Doc. 26-7, p. 3.) This informal grievance was rejected based on the finding Plaintiff had exceeded the number of grievances which could be filed per week. (Id.)

Plaintiff requested and received formal grievance forms as to each of these informal grievances. (Doc. 26-6, pp. 3, 10; Doc. 26-7, pp. 3, 6.) However, it was later determined Plaintiff should have never been given these formal grievance forms under policy because his

---

[10] See Williams v. Williams, No. 6:13-cv-16, 2013 WL 6210642, at *4 & n.5 (S.D. Ga. Nov. 27, 2013) (noting that SOP IIB05-0001 distinguishes between rejected and denied grievances and concluding a rejected grievance does not comply with the applicable SOP and thus, does not fulfill the proper exhaustion requirement as set forth in Woodford).

10

informal grievances had been rejected.[11] (Doc. 26-6, p. 7.) Plaintiff does not dispute that he did not file an appeal of these rejections. Consequently, under the first Turner step, even taking Plaintiff's version of facts as true, the filing of Informal Grievances Numbers 136404 and 136572 cannot be considered to meet the requirements of the applicable SOP, and cannot, therefore, be considered to fulfill the proper exhaustion requirements.[12]

Plaintiff asserts that he untimely filed Grievance Number 136572 due to his hospitalization after Cole's attack. (Doc. 42-1, p. 2.) Even accepting this assertion as true, however, Plaintiff still has not provided any explanation for his failure to appeal the rejection of this grievance. Under SOP IIB05-0001, all time limits can be waived due to good cause shown, and Plaintiff never explored this avenue. (Doc. 26-2, pp. 8, 10.) Consequently, even under the light applicable in the first Turner step, Plaintiff did not exhaust his administrative remedies through Grievance 136752.

Moreover, even if the Court were to move to the second Turner step, the Court can make specific findings that Plaintiff's hospitalization did not prevent him from timely and fully pursuing Grievance 136752 or otherwise exhausting his administrative remedies. As evidenced by the prolific amount of grievances that he filed, he clearly had the opportunity to complete the full grievance process. Indeed, Plaintiff filed eleven grievances between the date of the attack by

---

[11] Even though Plaintiff was provided with formal grievance forms on these informal grievances, the relative merits of Plaintiff's grievances were not reached. (Doc. 26-3, p. 2; Doc. 26-6, p. 10; Doc. 26-7, p. 6.) Thus, the rejection of these grievances is the proper status for this Court's review. Compare Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1215 (11th Cir. 2015) (agreeing with sister circuits that a prisoner exhausts his administrative remedies when officials decide a procedurally flawed grievance on the merits).

[12] Plaintiff also filed Informal Grievance Numbered 136576 on October 27, 2012, which was also rejected. This informal grievance concerned a policy/procedural challenge against Smith State Prison. (Doc. 26-3, p. 2.) This informal grievance apparently does not concern the events giving rise to Plaintiff's Complaint, which would explain counsel's omission of this filing from her submissions to the Court. In any event, Plaintiff has not contended that he exhausted his administrative remedies on the claims he raises in this lawsuit by filing this informal grievance.

Cole and the filing of grievance 136572. (Doc. 26-3, pp. 2–3.) Plaintiff's assertion is further belied by evidence of record indicating Plaintiff was hospitalized "for several days." (Doc. 26-10, p. 2.) It is disingenuous for Plaintiff to now claim he could not file a timely grievance because of his medical care and treatment.

### C. Informal Grievance Number 139619

On November 9, 2012, Plaintiff filed Informal Grievance Number 139619 and grieved about an incident occurring on September 1, 2012. Plaintiff stated that officers in the E-building at Smith State Prison allowed Cordarell Cole onto the yard, even though inmates in the D-building were assigned to the yard at that time. Plaintiff also stated Cole assaulted and stabbed him, and, as a result, Plaintiff was hospitalized. (Doc. 26-8, p. 3.) This informal grievance was rejected because Plaintiff had raised this issue on a previous occasion and because the informal grievance was filed out of time by two months. (Id. & at pp. 5–6.)

Again, Plaintiff does not dispute that he did not file an appeal on this informal grievance's rejection. Consequently, under the first Turner step, even taking Plaintiff's version of facts as true, Plaintiff did not comply with SOP IIB05-0001, and he cannot be considered to have exhausted his administrative remedies as a result.[13]

---

[13] As with Grievance Number 136572, Plaintiff's asserts that he untimely filed Grievance Number 139619 due to his hospitalization after Cole's attack. (Doc. 42-1, p. 2.) As discussed in Subsection B above, this argument provides no explanation as to why Cole failed to appeal the denial of this grievance or otherwise pursue this grievance. Thus, even if this fact were true, it does not change the first Turner step analysis as to Grievance Number 139619. Moreover, even if the Court were to move to the second Turner step, the Court can make specific findings that Plaintiff's hospitalization did not prevent him from timely and fully pursuing Grievance 139619, or otherwise exhausting his administrative remedies. Plaintiff filed fourteen grievances between the date of the attack by Cole and the filing of grievance 139619. (Doc. 26-3, pp. 2–3.)

### D. Grievance Number 151032

Plaintiff filed Formal Grievance Number 151032 on June 10, 2013.[14] Once again, Plaintiff complained that E-building officers at Smith State Prison allowed Cordarell Cole onto the same yard he was on September 1, 2012, and Cole assaulted and stabbed him several times. Plaintiff's grievance was rejected as out of time, in accordance with policy. (Doc. 26-9, p. 2.)

Once again, Plaintiff does not dispute that he did not appeal the rejection of this grievance, (doc. 26-3, p. 2), and under the first Turner step, even taking Plaintiff's version of facts as true, the filing of this grievance cannot be considered to satisfy the exhaustion requirements.[15]

### E. Grievance Number 151843

Finally, Plaintiff filed Formal Grievance Number 151843 on June 10, 2013. He contended he filed an informal grievance on October 27, 2012, against Smith State Prison staff regarding "inadequate classification and supervision of inmate", which led to him being stabbed while he was on the yard on September 1, 2012. This grievance, too, was rejected as being untimely under SOP IIB05-0001. (Doc. 26-10, p. 2.)

---

[14] Plaintiff was no longer required to file informal grievances after December 2012, as noted above in footnote 8 of this Report.

[15] As with Grievance Number 136572 and 139319, Plaintiff's asserts that he untimely filed Grievance Number 151032 due to his hospitalization after Cole's attack. (Doc. 42-1, p. 2.) As discussed in Subsection B above, this argument provides no explanation why Cole failed to appeal the denial of this grievance or otherwise pursue this grievance. Thus, even if this fact were true, it does not change the first Turner step analysis as to Grievance Number 151032. Moreover, even if the Court were to move to the second Turner step, the Court can make specific findings that Plaintiff's hospitalization did not prevent him from timely and fully pursuing Grievance 151032, or otherwise exhausting his administrative remedies. Plaintiff filed seventeen grievances between the date of the attack by Cole and the filing of grievance 151032. (Doc. 26-3, pp. 2–3.)

As before, Plaintiff did not file an appeal of this rejection, and, therefore, under the first Turner step, even taking Plaintiff's version of facts as true, the filing of this grievance cannot be considered to satisfy the exhaustion requirements. (Doc. 26-3, p. 2.)

Put succinctly, even accepting Plaintiff's version of the facts as true and viewing all of the facts in the light most favorable to Plaintiff, he did not exhaust his administrative remedies prior to filing his Complaint. For these reasons, the Court should **GRANT** this portion of Defendants' Motion to Dismiss, and **DISMISS** Plaintiff's Complaint, as amended, without prejudice. As a result, it is unnecessary to address the remaining portion of Defendants' Motion.

## IV. Remaining Motions

Plaintiff has filed two Motions to Amend his Complaint. (Docs. 62, 70.) Through these Motions, Plaintiff seeks to clarify the claims he has already asserted and add new Defendants to this case. Federal Rule of Civil Procedure 15(a)(2) directs that "[t]he court should freely give leave [to amend pleadings] when justice so requires." Thus, generally, a district court should afford a plaintiff at least one opportunity to amend a complaint in order to correct deficiencies. Langlois v. Traveler's Ins. Co., 401 Fed.Appx. 425, 426 (11th Cir. 2010) (citing Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir .2005)). "Ordinarily, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend should be freely given." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262 (11th Cir. 2004) (quotations and citations omitted). An exception to this rule exists, however, "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).

Having reviewed Plaintiff's proposed amendments, the Court finds numerous reasons to deny him leave to amend his Complaint. As an initial matter, Plaintiff has already amended his Complaint three times. Thus, allowing him to amend again would be to reward undue delay and his repeated failure to cure deficiencies with prior amendments while causing undue prejudice to Defendants. Moreover, Plaintiff's proposed amendments would be futile. The claims Plaintiff seeks to add would be dismissed for the same reason those claims he has already asserted should be dismissed—the failure to exhaust his administrative remedies. For these reasons, the Court **DENIES** Plaintiff's Motions to Amend.

Plaintiff has also moved to reinstate and/or add Defendants to this action. (Docs. 75, 76.) To the extent that Plaintiff is seeking to amend his Complaint to add claims or Defendants, that request is **DENIED** for the reasons set forth above. Moreover, to the extent that Plaintiff is asking this Court to reconsider its prior Order dismissing some Defendants, he has provided no valid basis for the Court to do so. Moreover, reinstating any already-dismissed Defendants would be futile, as any claims against those Defendants would be subject to dismissal for Plaintiff's failure to exhaust his administrative remedies. For these reasons, I **RECOMMEND** that the Court **DENY** Plaintiff's Motions to add and/or reinstate Defendants.

Defendants' Motion for Protective Order, (doc. 77), is **GRANTED** for the reasons set forth in that Motion. This Motion is not dismissed as moot because, by all indications, Plaintiff will continue filing frivolous and duplicative motions with the Court. Consequently, unless ordered to do so by this Court, Defendants need not file any response to any Motions, briefs, or other filings made by Plaintiff in this Court. This does not excuse Defendants from responding to any appellate filings that Plaintiff may make or from filing any objections that Defendants may have to this Report and Recommendation.

**IV.     Leave to Appeal *In Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[17]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[17] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.  See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

Based on the above analysis of Defendants' Motion to Dismiss, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss, (doc. 26), be **GRANTED**. I also **RECOMMEND** Plaintiff's Complaint, as amended, be **DISMISSED**, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies prior to the filing of his Complaint. I further **RECOMMEND** that Plaintiff be **DENIED** leave to appeal *in forma pauperis*.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 13th day of November, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA